UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BENJAMIN MAHAN, JR.,<br><br>Defendant. | Case No. 1:19-cr-00233-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Robert Benjamin Mahan, Jr.'s Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 188. The Government filed a Response opposing the Motion (Dkt. 193) and Mahan did not reply. The time to file a reply has passed, and the matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court DENIES the Motion.

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local rules

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On May 13, 2021, Mahan pleaded guilty to conspiracy to distribute methamphetamine. Dkt. 152. At the subsequent sentencing hearing, the Court sentenced Mahan to 120 months of imprisonment, followed by five years of supervised release. Dkt. 175. Mahan's anticipated release date is April 30, 2028.

On February 4, 2023, Mahan submitted a request for compassionate release to the warden of his facility. Dkt. 188-7. The Bureau of Prisons (the "BOP") did not act on his request. Then, on August 31, 2023, Mahan filed the instant Motion for Compassionate Release, arguing that his health issues, and the BOP's failure to properly treat them, constitute an extraordinary and compelling justification for a sentence reduction. Dkt. 188.

The parties agree that Mahan suffers from asthma, schizophrenia, major depressive disorder, seizure disorder, and obesity and that he takes several different medications to address his medical needs.

## III. LEGAL STANDARDS

Mahan seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. To grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy

---

of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 2

statements" issued by the U.S. Sentencing Commission.[2] 18 U.S.C. § 3582(c)(1)(A). If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *Rodriguez*, 424 F. Supp. 3d at 680.

The policy statements at U.S.S.G. § 1B1.13 establish that "extraordinary and compelling reasons" include: (1) a defendant's medical circumstances; (2) a defendant's age combined with his or her experiencing serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering abuse by an employee or contractor of the BOP; (5) a defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence; or (6) any other circumstance or combination of circumstances of similar gravity. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")).

to consult the statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments, U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908, at *1–2 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023)

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling justification for a sentence reduction.

## IV. ANALYSIS

**A. Exhaustion of Administrative Remedies**

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the Court for a reduction in sentence only after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." Here, Mahan filed a request with the warden of his facility (Dkt. 188-7), then waited beyond the requisite thirty days before filing the instant Motion (Dkt. 188). Accordingly, the Court finds he has satisfied the statutory exhaustion requirements.

**B. Extraordinary and Compelling Reasons**

In a Declaration attached to his Motion, Mahan states that his mental health is deteriorating, that the BOP has failed to fill several of his prescriptions in a timely manner, and that he has been denied treatment for a knee injury he incurred while incarcerated. Dkt. 188-1, at 1–4. He is particularly concerned about the BOP's delay in refilling his asthma medication, which he claims leaves him vulnerable to severe complications if he were to contract COVID-19. *Id.* at 3. His circumstances, he argues, are extraordinary and compelling enough to warrant a sentence reduction.

As noted above, U.S.S.G. § 1B1.13(b) states that a defendant's medical circumstances may justify a reduction in sentence. The policy statements expound on what kind of medical circumstances qualify. *Id.* at § 1B1.13(b)(1). Relevant to Mahan's Motion, the statements allow for a reduction where the defendant, while in BOP custody: (1) has substantially diminished capacity to provide self-care; (2) requires long-term or specialized medical care that is not or cannot be provided by the BOP; or (3) is at an increased risk of suffering severe complications as a result of exposure to infectious disease at his or her correctional facility, and that risk cannot be adequately mitigated. *Id.* at § 1B1.13(b)(1)(B)–(D). Alternatively, Mahan's circumstances could theoretically qualify as extraordinary and compelling under the catch-all "other reasons" prong. *Id.* at § 1B1.13(b)(5). The Court will address the applicability of each of these standards to Mahan below.

      *1. Ability to Provide Self-Care*

The Court looks first to whether Mahan's circumstances have substantially diminished his ability to provide self-care while in BOP custody. The ability to provide

self-care certainly involves possessing the physical and mental capacity to meet the challenges of daily life. However, as the District Court of Hawai'i has noted, "[p]roviding self-care [also] necessarily contemplates an ability to access reasonable, relatively prompt, and adequate medical care when there is a pressing need for it." *United States v. Lindell*, 517 F. Supp. 3d 1141, 1147 (D. Haw. 2021).

As an initial matter, while Mahan's records show that he has had some difficulties with his mental health, there is no indication that those difficulties have substantially diminished his ability to accomplish the tasks of daily life. Dkts. 188-4–188-5. In all his counseling sessions he has been "oriented to person, place, time, and situation." Dkt. 188-5, at 5–10. He has not exhibited suicidal or homicidal ideation. *Id.* He can dress and groom himself, set and follow through with appointments, and communicate his thoughts and feelings. *See id.* These facts weigh against a finding that his mental health has substantially diminished his ability to provide self-care. The next question the Court must answer, then, is whether Mahan has shown that he has been denied reasonable access to medical care in the face of a pressing need. The Court finds that he has not.

Mahan's BOP medical records indicate he has had regular access to doctors, dentists, mental health counselors, and medication throughout his incarceration. Dkts. 188-3–188-5; 193-3, at 1–7. The Court recognizes there may have been some lapses in refilling some of Mahan's medicines. These lapses are concerning. However, Mahan's latest medical records—from two visits that occurred *more recently* than his sworn declaration— indicate that "[m]edication orders written for [Mahan] have been reconciled with [his] history of current medications," and that Mahan understands and agrees with his current

care plan. Dkt. 193-3, at 1–7. Significantly, this "reconciliation" has involved a refill of Mahan's asthma medications. *Id.* at 5. BOP records also show that Mahan received a COVID-19 vaccination. Dkt. 188-3, at 48.

Regarding Mahan's knee, his medical records indicate that he was examined and treated on the day of his injury. Dkt. 188-3, at 28. Four days later, an x-ray of the knee revealed no fractures or tearing—only some minor swelling. *Id.* at 11. Roughly a month and a half later, Mahan had a follow-up appointment that again revealed no serious damage. *Id.* at 33. Due to continued pain, Mahan had his knee examined again approximately three months after his prior appointment. *Id.* at 8. This examination was likewise unremarkable. *Id.* Knee injuries are painful, and the Court sympathizes with Mahan. But the record indicates that his injury is being reasonably monitored and cared for.

In sum, Mahan has not shown that his ability to provide self-care has been substantially diminished, nor that he has been denied reasonable access to adequate medical care. The BOP's delays in providing Mahan with his prescribed medication are serious. But, as of yet, those delays have not risen to an extraordinary and compelling level. Thus, Mahan cannot claim relief under U.S.S.G. § 1B1.13(b)(1)(B).

### 2. Specialized Care That Cannot Be Provided by the BOP

A defendant may also request compassionate release if he or she suffers from a condition that necessitates long-term or specialized care that is not or cannot be provided by the BOP. U.S.S.G. § 1B1.13(b)(1)(C). However, Mahan's request for compassionate release fares no better under this analysis than it did under the self-care analysis. As discussed at length above, to the extent Mahan requires long-term or specialized care, he

has not shown that such care is being denied. To the contrary, as of July 2023, it appears that all of Mahan's major health issues are being reasonably addressed by the BOP. Dkt. 193-3, at 2–6. Thus, Mahan cannot claim relief under U.S.S.G. § 1B1.13(b)(1)(C).

### 3. Risks Associated with COVID-19

A defendant may also qualify for a sentence reduction if he or she is at an increased risk of suffering severe medical complications or death as a result of exposure to an ongoing outbreak of infectious disease or a public health emergency, and such risk cannot be timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D). Mahan makes passing references to fears of COVID-19. Dkt. 188, at 5–6; Dkt. 188-1, at 3. Without efforts to mitigate its effects, COVID-19 may present increased risks to individuals with asthma. However, Mahan has not shown that there is an outbreak in his facility or that his facility is subject to a public health emergency. Nor has he shown that his COVID-19 risks cannot be timely mitigated. In fact, as noted, Mahan has received a COVID-19 vaccination, which greatly mitigates his risk for serious complications if he were to be infected. Dkt. 188-3, at 48. The record also indicates that Mahan has received his required asthma medication, which serves as another mitigating factor. Dkt. 193-3, at 5. All in all, Mahan has not made the showing necessary to qualify for relief under U.S.S.G. § 1B1.13(b)(1)(D). Accordingly, such relief is denied.

### 4. Other Reasons

Finally, under U.S.S.G. § 1B1.13(b)(5), a defendant may present *any* circumstances or combination of circumstances that "when considered by themselves or together with any of the reasons [listed at § 1B1.13(b)(1)–(4)] are similar in gravity to those [listed in § 1B1.13(b)(1)–(4)]." Mahan makes no such presentation here. Even in combination, the

MEMORANDUM DECISION AND ORDER - 8

circumstances to which he cites do not rise to the level of extraordinary and compelling. Thus, his request for relief cannot be granted under U.S.S.G. § 1B1.13(b)(5).

### C. Danger to Individuals or the Community

Even if the Court were to find that Mahan has presented extraordinary and compelling reasons for a sentence reduction, Mahan has failed to show that, if released, he would not pose a danger to the community, as required by U.S.S.G. § 1B1.13(a)(2). The offense underlying Mahan's incarceration involved his being arrested with over thirty grams of methamphetamine, nearly fifty grams of heroin, and 196 fentanyl pills. Dkt. 159, at 6. Outside of this offense, Mahan has a lengthy criminal history involving weapons and the use and distribution of controlled substances. *Id.* at 9–11. The substances with which Mahan has been repeatedly involved are corrosive to communities and often deadly to users.

To argue for a sentence reduction, the Court would expect Mahan to address his history, and to discuss how he plans to avoid falling back into old habits. However, the only instance in which Mahan addresses his post-release plans is a one-sentence "pledge" at the end of his declaration. Dkt. 188-1, at 4. Therein he states flatly that he will "follow all rules and conditions of [his] release . . . and conform to all local, state and federal laws." *Id.* This is an admirable goal for which the Court commends Mahan. But on its own, it is not enough to show that he is no longer a danger to the community. Thus, he cannot qualify for compassionate release.

### D. 3553(a) Sentencing Factors

Mahan has also failed to show that the factors listed in 18 U.S.C. § 3553(a) weigh

MEMORANDUM DECISION AND ORDER - 9

in favor of a sentence reduction. Under § 3553(a), a sentence must, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and be similar to the sentences of similarly situated defendants. Mahan asserts that his sentencing memorandum discusses "at length and in detail" how the § 3553(a) factors favor a compassionate release. Dkt. 188, at 6. Not so. While there may be some overlap between how the § 3553(a) factors applied to Mahan at the time of sentencing and how they apply to him now, at sentencing, Mahan's arguments were tailored toward his receipt of lighter sentence—not his receipt of compassionate release. He cannot copy and paste those arguments into this motion and expect them to have a substantial effect.

Perhaps recognizing this shortcoming, Mahan states in passing that he has not caused any trouble in prison and that he has engaged in BOP educational programs. Again, this is laudable behavior. But on its own, this behavior does not show that the § 3553(a) factors favor Mahan's immediate release.

## V. CONCLUSION

In sum, the Court finds that Mahan has exhausted his administrative remedies. However, he has failed to show that: (1) extraordinary and compelling circumstances justify his release; (2) he does not present a danger to the community upon release; and (3) a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Therefore, the Court cannot depart from its prior sentence and release Mahan at this time. The Court DENIES Mahan's Motion.

## VI. ORDER

The Court HEREBY ORDERS:

1. Mahan's Motion to Reduce Sentence (Dkt. 188) is DENIED.

DATED: February 20, 2024

_____
David C. Nye
Chief U.S. District Court Judge